IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VICTOR JEROME WALTHOUR, SR., | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 09-05289 |
| | : | |
| v. | : | |
| | : | |
| GEORGE MILLER, et al., | : | |
| | : | |
| Defendants. | : | |

**OPINION AND ORDER**

**Slomsky, J.** June 22, 2010

**I.     INTRODUCTION**

This case was instituted by *pro se* Plaintiff, Victor Jerome Walthour, Sr., on November 12, 2009 with the filing of a civil complaint alleging excessive use of force and a violation of his First Amendment right to freedom of speech by Defendants Delaware County Park Police Officer George Miller; Investigator Tom Worrilow (incorrectly captioned as "Tom Warlow"); G. Michael Green (incorrectly captioned as "G. Michael Greene")[1]; the Delaware County Park Police; and the Honorable Walter Strohl, Judge of Pennsylvania Magisterial District Court 32-2-48. On February 18, 2010, Plaintiff filed a "Preacipe to Amend" and "Preacipe to Issue Alias Summons" (Doc. No. 2), which supplements the Complaint with additional factual allegations.[2]

---

[1] The official position of Defendant G. Michael Green is not specified in the filings in this case; nor is it clear what role he played in the alleged events. However, the Court does note that the Delaware County District Attorney is named G. Michael Green. Regardless, as explained below, Defendant Green was voluntarily dismissed from this case by Plaintiff.

[2] On page two (2) of this supplemental filing (Doc. No. 2), Plaintiff attempts to assert a claim against a new Defendant, Thomas Lawrie. However, there is no explanation regarding

1

On April 13, 2010, upon Plaintiff's Motion (Doc. No. 13), Defendant Green was voluntarily dismissed from this suit. (See Dismissal Order at Doc. No. 14.)

Currently before the Court are two Motions to Dismiss on behalf of all of the remaining Defendants. The first Motion to Dismiss (Doc. No. 7) was filed on behalf of Defendants Miller, Worrilow, and Delaware County (on behalf of the Delaware County Park Police). The second Motion to Dismiss (Doc. No. 10) was filed on behalf of Defendant Judge Strohl.

Plaintiff filed a Motion (Doc. No. 12) in response to the Motions to Dismiss (hereinafter "Plaintiff's Response in Opposition"), which states in full:

> We the people would like to withdraw request for admission, it is not needed to find guilty of crime. We the people would like to deny any further request for dismissal. Attorney's [sic] for Defendants overlooking criminal charges.

(Pl.'s Response in Opposition, 1.) The Court will construe this filing as Plaintiff's opposition to Defendants' Motions to Dismiss.

For the reasons that follow, the Court will deny the Motion to Dismiss as to Defendant Miller, and grant the Motions to Dismiss as to all remaining Defendants.

## II.    FACTUAL BACKGROUND

According to the Complaint, on June 2, 2009, Defendant Miller arrested Plaintiff for using vulgar language and for being loud and disruptive in the hallway of a Delaware County courthouse. (Compl., 7.) Plaintiff allegedly stated "aint this some sh*t" or "this is bullsh*t." Id. Defendant Miller is alleged to have lied in his police complaint by stating that he had to push and

---

who this person is or what specifically this person did. Additionally, it does not appear that Plaintiff sought to amend the caption of this case to add a party or that Plaintiff ever sought a summons or served a summons upon this person. As such, Thomas Lawrie is not a Defendant in this case.

shove Plaintiff out of the courthouse because Plaintiff was being unruly. (Id.) The Complaint also states that Defendant Miller used excessive force when he choked Plaintiff and shoved Plaintiff against a wall during the arrest and even when Plaintiff was handcuffed. (Id. at 6-7.) According to the Complaint, Defendant Miller also unsuccessfully attempted to trip Plaintiff so that he would fall down three or four steps while Plaintiff remained handcuffed. (Id. at 7.)

Plaintiff also alleges that Defendant Worrilow assisted Defendant Miller in preparing the complaint against Plaintiff and that Judge Strohl was assigned to preside over the criminal proceedings resulting from Plaintiff's arrest. (Id. at 6 and Exhibits 1-3.) Plaintiff further avers that Defendants Miller and Judge Strohl are racists, but he does not elaborate on or explain this conclusory allegation. (Id. at 7.)

## III. MOTION TO DISMISS STANDARD

Under Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" in defeating a motion to dismiss. Id. at 1949; see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). In other words, a complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (citing Phillips v. County of Allegheny 515 F.3d 224, 234-35 (3d Cir. 2008)). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'– 'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1950. This "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

3

In this case, the allegations contained in Plaintiff's Complaint are liberally construed, as pleadings filed by *pro se* plaintiffs are held to a less stringent standard than formal pleadings drafted by attorneys. Erickson v. Pardus, 551 U.S. 89, 94 (2007); see also Fed. R. Civ. P. 8(e) ("[p]leadings must be construed so as to do justice").

## IV. DISCUSSION

Plaintiff has asserted constitutional claims for (1) a violation of his First Amendment right to freedom of speech, and (2) use of excessive force in violation of the Fourth Amendment. Such claims may be brought under the civil rights statute, 42 U.S.C. § 1983, which provides a remedy for deprivation of a right established under the Constitution and federal law. Estate of Smith v. Marasco, 318 F.3d 497, 505 (3d Cir. 2003).

Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Thus, in order to properly plead a constitutional claim under Section 1983, Plaintiff must allege (1) conduct by a person, (2) who acted under color of state law, (3) which caused a deprivation of a federally protected right. West v. Atkins, 487 U.S. 42, 48 (1988). Plaintiff appears to assert the same claims, i.e., First and Fourth Amendment violations, against each of the named Defendants. Therefore, the claims regarding each Defendant are discussed separately

4

below.

**A.     Defendant Tom Worrilow (Incorrectly Captioned as "Tom Warlow")**

As a threshold matter, the "initial question in a section 1983 action is 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" Estate of Smith, 318 F.3d at 505 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998)).  In this case, Plaintiff has alleged deprivations of his First Amendment right to freedom of speech and his Fourth Amendment right to be free from the excessive use of force by a Delaware County Park police officer.

It appears that Plaintiff filed the Complaint against Defendant Worrilow simply because he participated in the process of taking Plaintiff into custody following his arrest by Defendant Miller.[3]  However, this bare assertion does not make out a violation of any constitutional right. Moreover, there are no further factual averments regarding Defendant Worrliow's involvement in any of the alleged events giving rise to this lawsuit.  Therefore, the Court will dismiss all claims against Defendant Worrilow.

**B.     Defendant Delaware County Park Police**

The Motion to Dismiss filed on behalf of the Delaware County Park Police correctly notes that police departments are sub-units of municipalities and, as such, are not proper parties in a suit under Section 1983.  Johnson v. City of Erie, 834 F. Supp. 873, 878 (W.D. Pa. 1993) ("The numerous courts that have considered the question whether a municipal police department

---

[3] Specifically, the Complaint makes a vague allegation that "Investigator Tom Warlow [sic] took the complaint in 06/09 and I have not heard a response in return." (Compl., 6.)

is a proper defendant in a section 1983 action have unanimously reached the conclusion that it is not.").

Furthermore, even if Plaintiff had named the correct municipality as a defendant, the Complaint fails to plead any facts to support a municipal liability claim under Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Under Monell, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Id. A plaintiff cannot rely on a *respondeat superior* theory to impose liability on a municipality. Brown v. City of Pittsburgh, 586 F.3d 263, 292 (3d Cir. 2009). Rather, Plaintiff must allege that the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed] the injury." Monell, 436 U.S. at 694. Plaintiff has not identified a municipal policy or custom that caused his alleged injury.

Therefore, Defendants' Motion to Dismiss will be granted as to the Delaware County Park Police and all claims against the Delaware County Park Police will be dismissed.

### C.  Defendant Judge Walter Strohl

Plaintiff's *pro se* Complaint does not indicate whether Judge Strohl is sued in his official or personal capacity. Construing the Complaint liberally, the Court will presume that Plaintiff intended to sue Judge Strohl in both capacities. First, the Court will address the inadequacy of Plaintiff's official capacity claims. Then, the Court will discuss why the personal capacity claims must also fail.

Although a state official, such as Judge Strohl, is literally a "person," a Section 1983 action for money damages against a state official in his official capacity is, in reality, a claim

against the state itself. Will v. Mich. Dep't of State Police, 491 U.S. 58, 64 (1989). A state is not a "person" within the meaning of Section 1983. Id. at 64. As the Supreme Court explained in Will:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties.... Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity.

Id. at 66. In other words, a claim against Judge Strohl in his official capacity is simply a claim against the state, and a state cannot be sued under Section 1983 for money damages. See Nelson v. Dauphin County Public Defender, No. 09-4466, 2010 WL 2075874, *1 (3d Cir. May 24, 2010) ("[N]o claim can be made against the Commonwealth of Pennsylvania, because it is not a 'person' subject to suit under section 1983."); Haybarger v. Lawrence County Adult Probation and Parole, 551 F.3d 193, 195 (3d Cir. 2008). Therefore, Plaintiff's official capacity claims against Judge Strohl will be dismissed.

In addition, Judge Strohl is entitled to judicial immunity for all claims against him in his personal capacity. A judicial officer, in the performance of his duties as a judge, is absolutely immune from suit in his personal capacity and is not liable for his judicial acts. Azbuko v. Royal, 443 F.3d 302, 303 (3d Cir. 2006) (*per curiam*). A judge will not be deprived of his judicial immunity even if his actions were in error, or in excess of his authority, or were taken with malice. Stump v. Sparkman, 435 U.S. 349, 356-57 (1978); Azbuko, 443 F.3d at 303. "[O]nly when he has acted in the 'clear absence of all jurisdiction'" will a judge be subject to liability. Stump, 435 U.S. at 356-57.

7

The allegations made against Judge Strohl are largely unclear. Plaintiff appears to believe that Judge Strohl has "supported" Defendant Miller in the criminal proceedings against Plaintiff. (Compl., 7.) According to the exhibits attached to the Complaint, Judge Strohl presided over some or all of the underlying criminal proceedings against Plaintiff. Without more, these allegations are vague and conclusory and do not demonstrate that Judge Strohl took any action against Plaintiff in the clear absence of all jurisdiction. Stump, 435 U.S. at 356-57. Accordingly, Judge Strohl is entitled to judicial immunity for all claims against him in his personal capacity.

For the foregoing reasons, Judge Strohl's Motion to Dismiss will be granted, and all claims against Judge Strohl will be dismissed.

**D.     Defendant George Miller**

Defendant Miller argues that his Motion to Dismiss should be granted because the Complaint "does not set forth sufficient facts to enable [him] to intelligently respond" and Plaintiff's claims are all legal conclusions.[4] (Def.'s Mem. of Law in Support of the Mot. to

---

[4] Defendant Miller also requests that, as an alternative to dismissal, the Court stay these proceedings pending the outcome of the underlying state criminal proceedings against Plaintiff. However, Defendant Miller provides no explanation as to why this civil rights case should be stayed other than the fact that "the claims in this case are intertwined with the pending criminal charges against plaintiff in the Court of Common Pleas of Delaware County arising out of the arrest at issue in this case." (Def. Miller's Mem. of Law in Support of the Mot. to Dismiss, 5.)

Staying a case is an extraordinary measure. Pelzer v. City of Philadelphia, No. 07-0038, 2007 WL 1377662, *2 (E.D. Pa. May 7, 2007). Although the Court has discretion to stay proceedings in exercising its power to control the docket, the party seeking the stay bears the burden of establishing that the stay is needed. Id. Moreover, in deciding whether to grant a stay in a civil case pending the resolution of a related criminal case, courts in the Third Circuit must weigh the five factors enunciated in Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, 87 F.R.D. 53, 56 (E.D. Pa. 1980). Those factors include: (1) Plaintiff's interest in proceeding expeditiously with the civil action as balanced against the prejudice to Plaintiff resulting from delay; (2) the burden on Defendants; (3) the burden and convenience of the Court; (4) the burden

Dismiss, 4.) The Court disagrees. The Complaint is specific in its allegations against Defendant Miller. Plaintiff's First and Fourth Amendment claims against Defendant Miller are addressed below.

### i. *First Amendment: Freedom of Speech*

Construing the Complaint liberally, in the light most favorable to Plaintiff, it appears that Plaintiff alleges his right to freedom of speech was violated when Defendant Miller arrested him for saying "ain't this some [sh*t]" or "this is bull[sh*t]" in the hallway of the Delaware County Court of Common Pleas. (Compl., 7.) The Delaware County Court of Common Pleas criminal docket in Commonwealth v. Walthour, No. CP-23-CR-06066-2009, shows that Plaintiff was arrested on June 2, 2009 for disorderly conduct and resisting arrest under 18 Pa.C.S.A. §§ 5503 and 5104 (the charge for resisting arrest was later dismissed).[5] Thus, at issue here is the important intersection between the government's right to maintain order and civility under Pennsylvania's disorderly conduct statute and a citizen's constitutional right to freedom of speech.

The First Amendment provides that "Congress shall make no law ... abridging the

---

on, and interests of, non-parties; and (5) the burden on the public interest. Id. Defendant Miller has not discussed any of these factors in his Motion to Dismiss, leaving the Court without any information upon which to make a sound judgment regarding the requested stay. Therefore, this request will be denied without prejudice for Defendant Miller to file a fully supported motion for a stay, if and when appropriate.

[5] The pertinent state court docket is attached as Exhibit "A" to Defendant Miller's Motion to Dismiss (Doc. No. 7). The docket is a matter of public record. In deciding a motion to dismiss, a court may consider documents outside of the complaint, such as matters of public record, court orders, and documents that form the basis of the claim. Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004).

freedom of speech ... or the right of the people to peacefully assemble." U.S. Const. amend. I.
The relevant portion of Pennsylvania's disorderly conduct statute provides:

> (a) **Offense defined.**– A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>
>> (1) engages in fighting or threatening, or in violent or tumultuous behavior;
>>
>> (2) makes unreasonable noise;
>>
>> (3) uses obscene language, or makes an obscene gesture; or
>>
>> (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.
>
> ****
>
> (c) **Definition.**– As used in this section the word "public" means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public.

18 Pa.C.S.A. § 5503.[6] Plaintiff was charged with violating each of the four (4) enumerated subsections of § 5503(a).

To begin the analysis, the Court notes that the First Amendment is not an "absolute shield" against a disorderly conduct charge. Startzell v. City of Philadelphia, 533 F.3d 183, 204 (3d Cir. 2008). Nor does the First Amendment "give absolute protection to every individual to speak whenever or wherever he pleases or to use any form of address in any circumstances that

---

[6] Section 5503 has been held constitutional by the Pennsylvania Supreme Court, which determined that the statute is neither overbroad nor vague, and does not violate the First Amendment. Commonwealth v. Mastrangelo, 414 A.2d 54 (Pa. 1980), *appeal dismissed*, 449 U.S. 894 (1980).

he chooses." Cohen v. California, 403 U.S. 15, 19 (1971). It has long been established that certain classes of speech may be prevented and punished without raising any constitutional concerns, e.g., child pornography, fighting words, speech that imminently incites illegal activity, and obscenity. See United States v. Stevens, 533 F.3d 218, 224 (3d Cir. 2008). The common theme among these classes of speech is that "the speech at issue constitutes a grave threat to human beings or, in the case of obscenity, appeals to the prurient interest." Id.

Similarly, under Pennsylvania's disorderly conduct statute, whether words or actions rise to the level of disorderly conduct will depend "upon whether they cause or unjustifiably risk a public disturbance. 'The cardinal feature of the crime of disorderly conduct is public unruliness which can or does lead to tumult and disorder.'" Commonwealth v. Hock, 728 A.2d 943, 946 (Pa. 1999) (quoting Commonwealth v. Greene, 189 A.2d 141, 144 (Pa. 1963)). Thus, it may be said that the disorderly conduct statute is coextensive with the First Amendment. See Mastrangelo, 414 A.2d at 58 (clarifying that "we now make clear that the disorderly conduct statute may not be used to punish anyone exercising a protected First Amendment right.").

Alternatively, speech that does not fall into one of these narrowly defined categories of unprotected speech (fighting words, obscenity, etc.), even speech that may be considered "rude, discourteous, ill-mannered, coarse and boorish," deserves constitutional protection. United States v. McDermott, 971 F. Supp. 939, 943 (E.D. Pa. 1997). As explained by Justice John Marshall Harlan:

> To many, the immediate consequence of this freedom may often appear to be only verbal tumult, discord, and even offensive utterance. These are, however, within established limits, in truth necessary side effects of the broader enduring values which the

> process of open debate permits us to achieve. That the air may at times seem filled with verbal cacophony is, in this sense not a sign of weakness but of strength. We cannot lose sight of the fact that, in what otherwise might seem a trifling and annoying instance of individual distasteful abuse of a privilege, these fundamental societal values are truly implicated. That is why "(w)holly neutral futilities * * * come under the protection of free speech as fully as do Keats' poems or Donne's sermons," ... and why "so long as the means are peaceful, the communication need not meet standards of acceptability."

Cohen, 403 U.S. at 24-25 (1971). The Third Circuit recently reaffirmed these principles, stating:

> Thus, "in public debate our own citizens must tolerate insulting, and even outrageous, speech in order to provide adequate breathing space to the freedoms protected by the First Amendment."

United States v. Marcavage, No. 09-3573, 2010 WL 2384839, *11 (3d Cir. June 16, 2010) (quoting Boos v. Barry, 485 U.S. 312, 322 (1988)). Consequently, "First Amendment jurisprudence requires a ... nuanced approach designed to strike the right balance between competing interests[,]" like those at issue here. Id. at *17.

Turning now to the allegations in the Complaint, Plaintiff alleges that Defendant Miller filed a police report and/or gave testimony in the Delaware County Court of Common Pleas detailing Plaintiff's arrest. Defendant Miller represented that he arrested Plaintiff for using obscene language and for being generally loud and disruptive in a courthouse hallway.[7] (Compl., 7.) Plaintiff apparently disputes several of Defendant Miller's contentions. Plaintiff acknowledges that he used vulgar language in the courthouse hallway, but he alleges that he merely used the vulgarity (some form of the word "sh*t") while speaking to his children; that he

---

[7] Neither Plaintiff, nor Defendants, have attached a copy of the police report or transcripts of any proceedings for the Court's review.

did not direct these words at any public officials, law enforcement, or any other person; and that he was not being generally loud and disruptive. (Id.)

Accepting Plaintiff's allegations as true, as the Court must do in deciding a Motion to Dismiss, Plaintiff has at least plausibly alleged that his conduct fell within the bounds of protected First Amendment speech. See Cohen, 403 U.S. at 22 ("we do not think the fact that some unwilling 'listeners' in a [courthouse] may have been briefly exposed to [Cohen's speech - a jacket bearing the words "Fu*k the Draft"] can serve to justify this breach of the peace conviction"); McDermott, 971 F. Supp. at 942-43 (finding that serviceman's words "whether they were variants of *fu\*k* or *bullsh\*t* [were] insufficient by themselves to constitute constitutionally unprotected fighting words"; and finding that such coarse language is not "obscene" under the first Amendment) (emphasis in original); Commonwealth v. Bryner, 652 A.2d 909, 912 (Pa. Super. 1995) (finding that shouting "go to hell, Betsy" in a public place, even if provocative or annoying, was not "obscene" within the meaning of the Pennsylvania disorderly conduct statute). Plaintiff's speech may in fact have been the type of "verbal cacophony" Justice Harlan alluded to in United States v. Cohen. Additionally, Plaintiff's word choice may have been especially poor in light of the fact that he was apparently speaking with his children. However, neither verbal cacophony, nor poor word choice, amount to the type of speech that falls outside the bounds of First Amendment protection.

Consequently, as is frequently the case, the characterization of Plaintiff's words and conduct will depend upon the totality of the surrounding circumstances, which will be born out through discovery as this case proceeds. At this stage of the litigation, however, the Court is bound to construe Plaintiff's Complaint in the light most favorable to him. Based on the facts

13

alleged, Plaintiff has shown that there is more than a mere possibility that Defendant Miller violated Plaintiff's First Amendment right to freedom of speech. Therefore, Defendants' Motion to Dismiss Plaintiff's First Amendment claim will be denied as to Defendant Miller only.

### ii.     *Fourth Amendment: Excessive Use of Force*

To address an excessive use of force claim brought under Section 1983, the Court must first identify the constitutional right allegedly infringed by the use of force. Graham v. Connor, 490 U.S. 386, 394 (1989). There are two primary sources of constitutional protection from abusive government conduct: (1) the Fourth Amendment's prohibition on unreasonable searches and seizures, and (2) the Eighth Amendment's ban on cruel and unusual punishments. Id. Once the Court determines the source of the constitutional right allegedly infringed, the "validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized 'excessive force' standard." Id.

In this case, the excessive force claim arises in the context of an arrest. Therefore, Plaintiff's claim is most properly characterized as a Fourth Amendment claim. Accordingly, the Court's analysis will be conducted using the Fourth Amendment's "reasonableness" standard. Id. at 394-95. In other words, to make out a use of excessive force claim, Plaintiff must allege that a seizure occurred, i.e., his arrest, and that it was unreasonable. Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004).

The reasonableness of Defendant Miller's use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. Of course, the right to make an arrest "necessarily carries with it the

right to use some degree of physical coercion or threat thereof to effect it." Id. The Supreme

Court has explained that:

> "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," ... violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation.

Id. at 396-97 (internal citation omitted). Thus, the alleged force used must rise above a *de minimis* level. Foster v. David, No. 04-4829, 2006 WL 2371976, *7 (E.D. Pa. Aug. 11, 2006).

Accordingly, to determine whether the force used to effectuate Plaintiff's arrest was reasonable "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Id. at 396. This balancing test requires careful scrutiny of the facts and circumstances in each case, including: (1) the severity of the crime; (2) whether the suspect posed an immediate threat to the officer's safety or the safety of others; and (3) whether the suspect was actively resisting arrest. Id. The Third Circuit has also noted several relevant factors to consider: (1) whether the force applied lead to injury; (2) the possibility that the suspect was violent or dangerous; (3) the duration of the officer's actions; (4) whether the officer's actions took place in the context of effecting an arrest; (5) the possibility that the suspect may have been armed; and (6) the number of persons with whom the officer had to contend at one time. Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997) *abrogated on other grounds by* Curley v. Klem, 499 F.3d 199 (3d Cir. 2007). Ultimately, the question is whether the totality of the circumstances justified the

type of seizure applied in this particular case.  Graham, 490 U.S. at 396.

Plaintiff alleges that Defendant Miller, after handcuffing Plaintiff, pushed, shoved, and choked him, slammed him against a wall, and attempted to trip him down three or four stairs. (Compl., 6-7.)  The Complaint also states that Plaintiff's daughter jumped on Defendant Miller's back while Defendant Miller was choking Plaintiff.  (Id. at 7.)  Plaintiff makes no allegation that he sustained any long-term injuries as a result of Defendant Miller's actions.

As noted above, not every push or shove will rise to the level of a constitutional violation. Here, however, Plaintiff has alleged more than mere pushing and shoving.  He alleges that he was choked and slammed against a wall by Defendant Miller, all of which occurred while his hands were cuffed behind his back.  Plaintiff also alleges that he was not being loud or disruptive prior to the arrest.  Furthermore, the crime for which the arrest was made was not of a serious nature.  There was no allegation that Plaintiff was armed and he was the only person with whom Defendant Miller had to contend.  At the motion to dismiss stage, the totality of the alleged circumstances are enough to satisfy the Court that Plaintiff has a plausible excessive use of force claim.

Accordingly, the Court will also deny Defendants' Motion to Dismiss the Fourth Amendment excessive use of force claim as to Defendant Miller.  As noted above, the Fourth Amendment claims are dismissed as to all other Defendants.

V.  **CONCLUSION**

For all of the above reasons, Defendants' Motions to Dismiss will be granted as to Defendants Tom Worrilow, the Delaware County Park Police, and the Honorable Walter Strohl,

and Plaintiff's Complaint shall be dismissed as to these Defendants.  The Motion to Dismiss Defendant Miller will be denied.  An appropriate Order follows.