IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VICTOR JEROME WALTHOUR, SR., | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | NO. 09-5289 |
| v. | : | |
| | : | |
| GEORGE MILLER, | : | |
| Defendant. | : | |

**OPINION**

Slomsky, J.                                                                                                                                     June 10, 2011

**I.     INTRODUCTION**

This case stems from the arrest of Plaintiff Victor Jerome Walthour, Sr. by Defendant George Miller, a Delaware County Park Police Officer. On June 2, 2009, Defendant arrested Plaintiff on the premises of the Court of Common Pleas of Delaware County. Plaintiff was charged with disorderly conduct in violation of 18 Pa. Cons. Stat. § 5503, and resisting arrest in violation of 18 Pa. Cons. Stat. § 5104. Based on the events surrounding the arrest, Plaintiff, acting *pro se*, filed in this Court a Complaint alleging a violation of his First and Fourth Amendment rights. In the related criminal case, Plaintiff entered a negotiated guilty plea to disorderly conduct in the Delaware County Court of Common Pleas. Even after the plea, Plaintiff continues to pursue his claim in this Court. Defendant George Miller now moves for summary judgment in his favor. For reasons that follow, the Court finds that there are no genuine issues of material fact and that the moving party is entitled to summary judgment as a matter of law. Accordingly, Defendant's Motion for Summary Judgment will be granted.

## II. STANDARD OF REVIEW

Granting summary judgment is an extraordinary remedy. Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 770 (3d Cir. 2009). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law. Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. Liberty Lobby, 477 U.S. at 247–49.

In ruling on a motion for summary judgment, the Court must view the evidence, and make all reasonable inferences from the evidence, in the light most favorable to the non-moving party. Chambers v. School Dist. of Philadelphia Bd. of Educ., 587 F.3d 176, 181 (3d Cir. 2009); Bouriez, 585 F.3d at 770. Whenever a factual issue arises that cannot be resolved without a credibility determination, at this stage the Court must credit the non-moving party's evidence over that presented by the moving party. Liberty Lobby, 477 U.S. at 255.

## III. FACTUAL BACKGROUND[1]

    A.    <u>Events Of June 2, 2009</u>

On June 2, 2009, Plaintiff was at the Court of Common Pleas of Delaware County to attend a hearing on a juvenile dependency proceeding before that court. (Defendant's Statement of Undisputed Facts, Doc. No. 35 ("Def. SUF") ¶ 4, Exhibits ("Exs.") 1C & 1D.) Delaware County Children and Youth Services Casework Supervisor, Karen Kilson, was present that day for the same hearing. At approximately 10:00 a.m., Ms. Kilson became concerned about the behavior of Plaintiff. He was pacing back-and-forth in front of his children, one of whom had been the victim of physical abuse by him. He conversed with the children in a threatening and intimidating manner. (Def. SUF ¶ 4, Ex. 1D.) Caseworker Tamika Clarke was also present and noticed what she considered to be hostile behavior by Plaintiff, which included inappropriate comments, telling his children that they need not listen to the caseworkers and that the women were "white trash." (Def. SUF at Ex. 1C.)

In response to Plaintiff's behavior and comments, Ms. Kilson requested that a Park Police

---

[1] The facts are derived from Defendant's Statement of Undisputed Facts and attached exhibits (Doc. No. 35). To identify genuine issues of material fact on a motion for summary judgment, a party "cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." In re DVI, Inc. Securities Litigation, No. 03-5336, 2010 WL 3522086, at *4 (E.D. Pa. Sept. 3, 2010); see also Fed. R. Civ. P. 56(c); Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 770 (3d Cir. 2009) (stating that summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law"). As explained in more detail in this Opinion, Plaintiff has not offered any exhibits or affidavits to establish a version of the events of June 2, 2009 that differs from Defendant's version. Plaintiff has argued facts set forth in his legal memorandum. As noted, this is not the appropriate way to establish a genuine issue of material fact. He has also submitted four exhibits. As will be discussed below, these exhibits do not raise a genuine issue of material fact.

Officer report to the courtroom area. (Def. SUF at Ex. D.) Defendant responded to the request for assistance. He encountered Plaintiff, who acted with hostility and was speaking loudly and cursing. (Def. SUF ¶ 6, Ex. 1B.) Specifically, Plaintiff stated, "this is a bunch of sh*t." (Def. SUF at Ex. B.) Defendant advised Plaintiff several times to lower his voice and Plaintiff refused. (Def. SUF at Ex. 1A.) As a result, Defendant arrested Plaintiff and charged him with violations of all four subsections of the Pennsylvania disorderly conduct statute, 18 Pa. Cons. Stat. §§ 5503(a)(1)-(4).[2] (Def. SUF ¶ 7, Ex. 1B.) Plaintiff was also charged with resisting arrest in violation of 18 Pa. Cons. Stat. § 5104.[3]

---

[2] 18 Pa. Cons. Stat. § 5503(a) provides:

(a) Offense defined.--A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
    (1) engages in fighting or threatening, or in violent or tumultuous behavior;
    (2) makes unreasonable noise;
    (3) uses obscene language, or makes an obscene gesture; or
    (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

[3] Plaintiff was charged with four counts of disorderly conduct in violation of 18 Pa. Cons. Stat. §§ 5503(a)(1) through (4), and one count of resisting arrest in violation of 18 Pa. Cons. Stat. § 5104. (Def. SUF at Ex. 2.) The disorderly conduct violations were charged against Plaintiff as summary offenses and the resisting arrest violation as a misdemeanor of the second degree. (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl. Opp.") at 3, Ex. 2.) Subsequently, two of the charges against Plaintiff were dismissed: the summary offense of disorderly conduct in violation of 18 Pa. Cons. Stat. § 5503(a)(4) and the misdemeanor of resisting arrest in violation of 18 Pa. Cons. Stat. § 5104. (Pl. Opp. at Ex. 2.)

    On October 5, 2010, Plaintiff entered a negotiated guilty plea that encompassed three criminal cases pending against him, including the case arising out of the events on June 2, 2009. (Def. SUF ¶ 2.) The summary offenses of disorderly conduct in violation of §§ 5503(a)(1), (2), and (3) were dismissed or nolle prossed. The summary offense of disorderly conduct in violation of § 5503(a)(4) was reinstated as a misdemeanor of the third degree. (Def. SUF at Ex. 2.) Plaintiff entered a guilty plea to the reinstated misdemeanor charge of disorderly conduct in violation of § 5503(a)(4). (Def. SUF ¶ 2, Ex. 2.)

4

At the time of the arrest, Defendant placed handcuffs on Plaintiff, who continued to speak loudly and use profanity. (Def. SUF at Ex. 1B.) Defendant then attempted to escort Plaintiff through a secure doorway in the courthouse to take him to police headquarters, but Plaintiff stopped halfway through the doorway, causing the door to remain open. (Id.) At that point, one of Plaintiff's daughters, who was fifteen-years-old at the time, jumped on Defendant's back and placed her hands and arms around his throat. (Id.; Def. SUF at Ex. 1E.) Additional officers assisted in removing the daughter from Defendant's back and Plaintiff was placed against the wall until the situation was under control. (Def. SUF at Exs. 1B, 1E.) Plaintiff was ultimately taken to police headquarters. (Def. SUF at Exs. 1B, 1E.)

B.  Plaintiff's Complaint Filed In This Case

Before being formally charged in the Delaware County Court of Common Pleas for his conduct on June 2, 2009, Plaintiff filed a *pro se* Complaint in this Court on November 12, 2009. Plaintiff makes a First Amendment retaliation claim regarding his arrest, which allegedly followed his use of obscene language in the courthouse hallway. (Def. SUF ¶ 11; Doc. No. 1 (the "Complaint") at 7.) Plaintiff also alleges that Defendant used excessive force when arresting him in violation of his Fourth Amendment rights. (Def. SUF ¶ 11; Complaint at 7.) Plaintiff claims

---

Despite what is evident in the state court docket, Plaintiff alleges that he did not plead guilty, but rather Delaware County has "manipulated paperwork and has shown [Plaintiff] plead [sic] guilty to a charge that was dismissed." (Pl. Opp. at 4, Ex. 4.) In responding to a motion for summary judgment, a party may not "just spout unsupported allegations regarding the authenticity of" Defendant's exhibits. Monarch Life Ins. Co. v. Estate of Tarone, No. 09-734, 2010 WL 331703, at *3, n.8 (E.D. Pa. 2010). Rather, the party "'must present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Id. (quoting Liberty Lobby, 477 U.S. at 257). Here, Plaintiff offers no evidence to prove that the documents were manipulated or are not authentic.

that Defendant used excessive force because he is a racist and because Defendant was retaliating for the actions of Plaintiff's daughter, who jumped on Defendant's back. (Def. SUF ¶ 11; Complaint at 7.)

IV.   **DISCUSSION**

   A.   <u>Plaintiff Has Not Established A Genuine Issue Of Material Fact</u>

As outlined above, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see</u> <u>Mendoza v. Gribetz Intern., Inc.</u>, No. 10-1904, 2011 WL 2117610, at *2 (E.D. Pa. May 27, 2011). The moving party bears the initial burden of identifying those portions of the record that it believes illustrate the absence of a genuine issue of material fact. <u>Id.</u> (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986)). If the moving party makes such a demonstration, then the burden shifts to the non-movant, who must offer evidence that establishes a genuine issue of material fact that should proceed to trial. <u>Id.</u>; <u>see also</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986). "Such affirmative evidence—regardless of whether it is direct or circumstantial—must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." <u>Id.</u> (quoting <u>Williams v. Borough of W. Chester</u>, 891 F.2d 458, 460–61 (3d Cir.1989)).

As stated above, <u>see</u> n.1, Defendant, the movant in this case, has met his burden of identifying the portions of the record that illustrate an absence of a genuine issue of material fact. Defendant filed a Statement of Undisputed Facts and attached seven exhibits consisting mostly of

6

state court documents, which, together, establish the course of events of June 2, 2009.[4]
Defendant's submissions confirm the facts set forth above, which support his initial burden.

That burden now shifts to the non-movant, or Plaintiff, to offer evidence that establishes a genuine issue of material fact that would warrant the case proceeding to trial. Again, as stated above, see n. 1, Plaintiff has failed to do so. In support of his brief in opposition to Defendant's Motion, Plaintiff attached four exhibits.[5] None of the exhibits are sufficient to establish a genuine issue of material fact. Two documents showing the Court of Common Pleas docketing history of Plaintiff's criminal case ultimately establish that Plaintiff pled guilty to a misdemeanor charge of disorderly conduct in violation of § 5503(a)(4). Two additional exhibits amount to a pleading and a legal memorandum which, without additional documentary evidence, cannot be

---

[4] Defendant attached the following exhibits: (1)(A) June 2, 2009, Delaware County Police Criminal Complaint including an Affidavit of Probable Cause signed by Defendant, the arresting officer, stating that Plaintiff was acting in a hostile manner and speaking with a raised voice; (1)(B) June 2, 2009, Delaware County Incident Investigation Report, including a summary from Defendant, the arresting officer, stating that Plaintiff was acting in a hostile manner; (1)(C) June 2, 2009 Statement provided to Delaware County Police from Caseworker Clarke, stating that she witnessed Plaintiff acting in a hostile manner; (1)(D) June 2, 2009 Statement provided to Delaware County Police from Caseworker Kilson, stating that Plaintiff was acting in a hostile manner, such that she felt it necessary to call for police intervention; (1)(D) June 2, 2009 Delaware County statement from Sergeant Charles List, explaining that he witnessed Plaintiff "screaming profanities" while in the custody of Defendant and that he witnessed Plaintiff's daughter grab Defendant around the neck; (2) Delaware County Court of Common Pleas Court History; (3) Certificate of Imposition of Judgment of Sentence on the disorderly conduct charge confirming that Plaintiff was sentenced on October 5, 2010 for a misdemeanor of the third degree of disorderly conduct; (4) Certificate of Imposition of Judgment of Sentence on the aggravated assault offense involving Plaintiff's daughter; (5) Certificate of Imposition of Judgment of Sentence on the terroristic threat charges; (6) Pennsylvania disorderly conduct statute; and (7) Plaintiff's Complaint.

[5] Plaintiff attached the following exhibits: (1) Plaintiff's Complaint, (2) Delaware County Court of Common Pleas Criminal Docket; (3) Delaware County Court of Common Pleas Court History; and (4) Letter to the Court from Plaintiff, filed November 12, 2010.

7

relied upon to establish a genuine issue of material fact. See In re DVI, No. 03-5336, 2010 WL 3522086, at *4. None of Plaintiff's exhibits contain facts that contradict those presented by Defendant and they do not raise a genuine issue of material fact.

    B.    Defendant Is Entitled To Summary Judgment As A Matter Of Law On The First Amendment Claim Under *Heck v. Humphrey*

Having found that no genuine issue of material fact exists, the Court will proceed to evaluate the facts outlined above to determine whether Defendant is entitled to summary judgment as a matter of law on the First Amendment retaliation claim. For reasons set forth below, the Court finds that, pursuant to the doctrine set forth in Heck v. Humphrey, 512 U.S. 477 (1994), Defendant is entitled to summary judgment as a matter of law on the First Amendment retaliation claim.

In the Complaint, Plaintiff asserts that Defendant had insufficient probable cause to arrest him. According to Plaintiff, he was arrested solely for cursing in the hallway in the courthouse, in violation of his right not to be retaliated against for exercising his First Amendment rights. (Complaint at 7.) Defendant counters that Plaintiff's admission through his guilty plea that he engaged in disorderly conduct negates the premise that he was arrested merely for using vulgar language, as opposed to being arrested for engaging in other hazardous conduct that warranted the arrest. (See Def. Defendant's Motion for Summary Judgment, Doc. No. 34 ("Def. SJM") at 6.)

Plaintiff pled guilty to a charge of disorderly conduct in violation of § 5503(4), thereby conceding that he created a hazardous or physically offensive condition, which established probable cause for his arrest. Plaintiff now stands convicted on that charge. For this reason,

8

Defendant argues that Plaintiff is barred from claiming here both that Defendant did not have probable cause to arrest him, and that he was arrested solely for cursing in the hallway of the courthouse. (Def. SJM at 5.) Defendant also argues that if the Court were to find Plaintiff's First Amendment rights were violated by his arrest, it would render Plaintiff's related state conviction for disorderly conduct invalid. The Court agrees with Defendant's assertions.

In <u>Heck v. Humphrey</u> the U.S. Supreme Court held that "when a state prisoner[6] seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate the conviction or sentence has already been invalidated." 512 U.S. 477, 486-87 (1994). Further, the Supreme Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . . A claim for

---

[6] Although Plaintiff had been arrested prior to his filing the instant § 1983 lawsuit, he had not yet been sentenced and was not in custody. During the pendency of the lawsuit, Plaintiff was sentenced to one year probation on the disorderly conduct charge. Because Plaintiff was and is at present subject to a sentence of a court, he was and is technically "in custody," although not as a "prisoner." For this reason, the Court is deciding the First Amendment retaliation claim on the merits at the summary judgment stage. It should be noted that in <u>Spencer v. Kemma</u>, 523 U.S. 1 (1998), five U.S. Supreme Court justices in concurring and dissenting opinions took the position that the <u>Heck</u> doctrine does not apply to a § 1983 claimant who is not in state custody and who therefore cannot seek relief in a federal habeas corpus proceeding. The lower courts are divided over whether the positions of these five justices should be viewed as binding precedent. 1A Martin A. Schwartz, Section 1983 Litigation: Claims and Defenses § 10.06 (4th ed. 2005). In a recent, post-<u>Heck</u> case, the Third circuit declined to extend §1983 relief to "address constitutional wrongs where habeas relief is no longer available," when a plaintiff is not in custody. See <u>Williams v. Consovoy</u>, 453 F.3d 173, 177 (3d Cir. 2006).

9

>    damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

Id. (emphasis in original). The Third Circuit has applied Heck, explaining that the decision was "based on the Supreme Court's desire to prevent parallel litigation over the issues of probable cause and guilt" and to "prevent the possibility of two conflicting resolutions arising out of the same successful prosecution, and preclude a convicted criminal defendant from collaterally attacking his conviction through the vehicle of a civil suit." Perez v. Georgelis, 351 Fed. App'x 788, No. 08-4420, 2009 WL 3792356, at *790 (3d Cir. Nov. 13, 2009).

Upon consideration of the purpose and reasoning behind Heck, it is clear that Plaintiff's First Amendment claim is not viable. Plaintiff has not met Heck's requirement that his conviction was invalidated through available state or federal remedies. See Id. at 789. Further, when Plaintiff entered the guilty plea, he, in effect, conceded that he engaged in actions giving rise to probable cause to arrest him for disorderly conduct. Therefore, he is precluded from contesting in this civil suit the probable cause for his arrest. Plaintiff cannot simultaneously concede the existence of "probable cause and guilt" in the criminal case and object to it in this civil case. To allow Plaintiff to take this position would give rise to "two conflicting resolutions arising out of the same successful prosecution;" that is, a finding that Defendant Miller acted within the bounds of the law in the criminal case, and a finding that he acted outside the bounds of the law in this civil case. See Perez, 2009 WL 3792356, at *790. The Heck decision does not permit such a conflict to exist. Consequently, the First Amendment retaliation claim must be dismissed.

### C. Defendant Is Entitled To Summary Judgment As A Matter Of Law On The Fourth Amendment Claim Because There Is No Evidence In The Record To Support This Claim

Defendant is also entitled to Summary Judgment as a matter of law on the Fourth Amendment excessive force claim. The record does not contain legally sufficient facts to establish that Defendant acted with excessive force during the arrest of Plaintiff on June 2, 2009.

The evidence in the record shows that Plaintiff was acting in a loud and disorderly manner in the hallway of the courthouse. The record also shows that Plaintiff refused Defendant's request to lower his voice and calm down. Further, the record establishes that after Defendant placed Plaintiff in handcuffs, Plaintiff physically resisted Defendant's attempt to bring him to police headquarters.

Viewing the totality of the circumstances objectively, it is apparent that Defendant had probable cause to arrest Plaintiff and responded with the amount of force reasonably appropriate given the circumstances. See Graham v. Connor, 490 U.S. 386, 396 (1989) (establishing that the standard of "reasonableness at the moment" applies when evaluating excessive force claims); Mitchell v. City of Philadelphia, No. 09-4459, 2011 WL 1448123, at *2 (E.D. Pa. Mar. 29, 2011) ("In an excessive force case, whether there is a constitutional violation is properly analyzed under the Fourth Amendment's objective reasonableness standard[.]") (quoting Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007) (internal quotation marks omitted)); Curley, 499 F.3d at 206 ("The relevant inquiry is 'the reasonableness of the officer's belief as to the appropriate level of force[,]' which 'should be judged from [the officer's] on-scene perspective,' and not in the '20/20

vision of hindsight.'") (quoting Saucier, 533 U.S. at 205).[7]

Moreover, the record is clear that Plaintiff was not injured by Defendant. In fact, Plaintiff does not even allege to have been injured. Without any injury there can be no constitutional violation involving excessive force. See Bensinger v. Mullen, No. 99-1771, 2000 WL 1100781 (E.D. Pa. 2000 Aug. 4, 2000) (finding that plaintiff was not subjected to excessive force in violation of the Fourth Amendment after considering, among other factors, that plaintiff did not establish more than *de minimus* injuries); see also Ingraham v. Wright, 430 U.S. 651, 674 (1977) (stating that a plaintiff must plead an injury above the *de minimus* level in order for a constitutional claim to arise). Further, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."[8] Graham v. Connor, 490 U.S. 386, 396 (1989). Therefore, Plaintiff has not established a violation of the Fourth Amendment and Defendant is entitled to summary judgment on this claim.

---

[7] The Court has also considered the core factors usually cited in evaluating whether an excessive force claim has been established by a plaintiff in light of the totality of the circumstances. They include: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Mitchell, 2011 WL 1448123, at *2 (citing Saucier, 533 U.S. at 207). An evaluation of the evidence here, under these factors, shows that there is no Fourth Amendment violation.

[8] Plaintiff states in his memorandum of law that Defendant attempted to trip him down the stairs and that Defendant choked him and pushed him against the wall. (Pl. Opp. at 3.) Plaintiff does not allege that he was injured as a result of Defendant's actions. (See id.) As stated above in n.1, facts put forth in a memorandum of law without any additional evidentiary support do not create an issue of fact for purposes of summary judgment. Even if the Court were to credit these facts, Plaintiff has not alleged that he was injured, and, as stated, not every push or shove amounts to a Fourth Amendment violation.

D. Defendant Is Entitled To Summary Judgment As A Matter Of Law Based On Qualified Immunity

Defendant is also entitled to summary judgment as a matter of law because he is entitled to qualified immunity. Defendant did not violate a clearly established constitutional right of which a reasonable officer in his position would have knowledge.

Qualified immunity is properly resolved at the summary judgment stage of the proceedings. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The law regarding qualified immunity is well-established. As the Third Circuit stated in Lamont v. New Jersey:

> Government officials performing discretionary functions are immune "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed.2d 396 (1982). To determine whether an officer is qualifiedly immune from suit, we ask (1) whether the officer violated a constitutional right, and (2) whether the right was clearly established, such that "it would [have been] clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 201–02, 121 S. Ct. 2151, 150 L. Ed.2d 272 (2001); see also Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed.2d 523 (1987) (holding that, for purposes of the second question, the right must have been clearly established in a particularized sense, such that "a reasonable official would [have understood] that what he [wa]s doing violate[d] that right").

No. 09–1845, 2011 WL 753856, at *4 (3d Cir. Mar. 4, 2011). A Court is permitted to exercise discretion in deciding which of the two prongs of the qualified immunity test should be addressed first in light of the circumstances. Id. (citing Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 815–16, 172 L. Ed. 2d 565 (2009)). Here, the Court will address first whether Defendant violated Plaintiff's First and Fourth Amendment rights, respectively. In doing so, the Court will view the facts in the light most favorable to Plaintiff as the non-moving party on the qualified immunity claim. Kelly v. Borough of Carlisle, 622 F. 3d 248, 253 (3d Cir. 2010).

1. *Defendant is entitled to qualified immunity on the First Amendment claim*

An individual may bring a claim for First Amendment retaliation against a government actor when that actor retaliates against the individual for exercising the right to free speech.[9] Anderson, 125 F.3d at 161. In order to establish a claim for First Amendment retaliation, Plaintiff must show that (1) his conduct was constitutionally protected and (2) his protected activity was a substantial or motivating factor in the alleged retaliatory action. A defendant may defeat such a claim "by showing that it would have taken the same action even in the absence of protected conduct." Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir. 2002) (quoting Bd. of County Comm'rs v. Umbehr, 518 U.S. 669, 675 (1996)). Here, Plaintiff alleges a First Amendment retaliation claim against Defendant, asserting that he arrested Plaintiff for cursing in the hallway of the Delaware County Courthouse. The record, however, shows that Plaintiff was not arrested merely for using obscene language. Rather, Plaintiff was arrested because he exhibited hostile behavior, was speaking loudly and in an inflammatory manner, and was drawing attention to himself in the hallway of courthouse. (Def. SUF, Ex. B.) Those actions established probable cause for Defendant to arrest of Plaintiff under the subsections of the Pennsylvania disorderly conduct statute not related to obscene language. Accordingly, Defendant would have arrested Plaintiff even without the cursing.[10]

---

[9] Although the Complaint does not specifically refer to 42 U.S.C. § 1983, it is evident that Plaintiff is bringing his two constitutional claims under this statute.

[10] Plaintiff was arrested for violating all four subsections of the Pennsylvania disorderly conduct statute, 18 Pa. Cons. Stat. §§ 5503(a)(1) through (4). One subsection makes it a crime to use obscene language or an obscene gesture. 18 Pa. Cons. Stat § 5503(a)(3). The charge against Plaintiff relating to use of obscene language was ultimately dropped. The record contains ample evidence to support probable cause to arrest Plaintiff for violating the other three subsections of the disorderly conduct statute.

Because Plaintiff has not established that Defendant retaliated against him for exercising his First Amendment rights, the Court is not required to address the second prong of the qualified immunity test: whether it would have been clear to a reasonable officer that Defendant's conduct was unlawful in the situation he confronted. The Court will nonetheless address the second prong. Defendant received notice that a man was acting in a loud and hostile manner in the courthouse. He came upon Plaintiff and found that he was in fact in a volatile state. Defendant asked Plaintiff to regain his composure and lower his voice and Plaintiff refused to do so. Defendant then arrested Plaintiff. Based on these facts, Defendant would not have known that his actions violated clearly established law prohibiting retaliatory conduct against Plaintiff for exercising his First Amendment rights. Defendant is therefore entitled to qualified immunity on the retaliation claim.

> 2. *Defendant is entitled to qualified immunity on the Fourth Amendment claim*

As the Court has already determined above, see supra pp. 11-12, Plaintiff has not established that Defendant violated his Fourth Amendment rights because Defendant did not use excessive force when he arrested Plaintiff on June 2, 2009. To the contrary, the record shows that Defendant used no force at all until Plaintiff was already in handcuffs and resisted by refusing to walk through a secure door. At that time, Plaintiff's daughter jumped on the back of Defendant and Defendant and another officer used force to bring the situation under control. Pennsylvania law authorizes an arresting officer to "use . . . any force which he believes to be necessary to effect the arrest and . . . any force which he believes to be necessary to defend himself or another from bodily harm while making the arrest." 18 Pa. Cons. Stat. § 508. Viewed

objectively, the evidence in the record shows that Defendant acted within what is permitted under Pennsylvania law. Moreover, Plaintiff has not alleged any injury as a result of Defendant's conduct. The U.S. Supreme Court has held that there must be an alleged injury and that the alleged injury must rise above the *de minimus* level in order for a constitutional claim to arise. See Ingraham, 430 U.S. at 674.

Because Plaintiff has not established that Defendant acted in violation of the Fourth Amendment, the Court need not address the second prong of the qualified immunity test: whether it would have been clear to a reasonable officer that Defendant's conduct was unlawful in the situation he confronted. Once again, however, the Court will address the second prong. "With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham, 490 U.S. at 396. Given this standard, it is clear from the facts that Defendant acted in a reasonable manner given the circumstances with which he was confronted. Moreover, existing precedent does not show "beyond debate" that the conduct of Defendant here would have been clearly unreasonable under the circumstances. See Ashcroft v. al-Kidd, --- S.Ct. ----, 2011 WL 2119110 (May 31, 2011). Defendant is entitled to qualified immunity on the Fourth Amendment claim.

## V.     CONCLUSION

Plaintiff has not established any genuine issues of material fact. Viewing the facts in the light most favorable to Plaintiff, he has not established a violation of the Fourth Amendment. Moreover, the Heck v. Humphrey doctrine precludes Plaintiff from pursuing a retaliation claim for exercising his First Amendment rights. Further, Defendant is entitled to qualified immunity

on both claims. Consequently, the Court will grant Defendant's Motion for Summary Judgment.

An appropriate Order follows.